OLD COLONY TRUST COMPANY *vs.* MEDFIELD AND MEDWAY STREET RAILWAY COMPANY.

Suffolk.   January 23, 1913. — May 31, 1913.

Present: RUGG, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Mortgage*, Of personal property: recording. *Street Railway*. *Words*, "Date written in the mortgage."

The requirement of R. L. c. 198, § 1, that a mortgage of personal property must be recorded within fifteen days "from the date written in the mortgage" in order to be enforceable against a person other than the parties thereto unless

the mortgaged property is delivered to and retained by the mortgagee, is satisfied as to an indenture between a street railway company and a trust company whereby the street railway company conveyed all its property, both real and personal, to the trust company to be held by it in mortgage to secure an issue of coupon bonds, if such indenture is recorded within fifteen days after the date stated in the attesting clause as that of its execution and acknowledgment by the street railway company, although in the caption of the instrument it is referred to as dated twenty-five days previous thereto, if other provisions of the instrument show that the date recited in the caption merely designated the date to be placed upon the bonds when issued.

A street railway company conveyed all of its property to a trust company in mortgage to secure an issue of bonds. Thereafter it hired all of the electric power used in the operation of its street railway from another street railway company under a contract in writing from which it appeared that there was no intention to charge the property with a lien. After the payments of interest on the bonds were three years in arrears, and the payments for power to the second street railway company were two years in arrears, the trustees sought by a suit in equity to foreclose the mortgage and a receiver was appointed. The second company proved its claim for the agreed compensation for power before the receiver, who allowed the claim but gave priority to the bondholders. It did not appear that the delay in instituting the foreclosure proceedings was for the purpose of benefiting the mortgagee by the claimant's expenditures. *Held,* that the bondholders were entitled to priority.

BILL IN EQUITY, filed in the Supreme Judicial Court on May 3, 1912, by the plaintiff as successor by merger under St. 1911, c. 128, of the Mercantile Trust Company, the trustee in a mortgage of real and personal property given to it by the defendant to secure an issue of bonds, seeking a foreclosure of the mortgage and the appointment of an operating receiver of the defendant's property.

Eugene H. Mather, Esquire, was appointed receiver and the bill was taken *pro confesso.*

The receiver filed a report as to claims of creditors of the defendant and allowed a claim of the Milford, Attleborough and Woonsocket Street Railway Company in the sum of $11,457.50 for electric power furnished to the defendant, but declared that the claim should be subject to the claim of the bondholders secured by the plaintiff's mortgage. The Milford, Attleborough and Woonsocket Street Railway Company objected to the allowance of the report as to that item. The facts being agreed upon, the case was reserved by *Morton,* J., for determination by the full court.

The material facts are stated in the opinion.

*H. S. Davis,* (*R. H. Johnson,* with him,) for the plaintiff.

*H. H. Fuller,* for the defendant.

BRALEY, J.   The defendant having made default in the payment of the semi-annual instalments of interest, the bill is brought by the plaintiff, who by force of the St. of 1911, c. 128, is the successor of the original trustee, for a foreclosure of the mortgage or indenture of trust by the railway company upon all its real and personal property as security for the payment of the bonds. A decree has been entered taking the bill for confessed as against the defendant, and no question is raised as to the regularity of the proceedings, or the right of the plaintiff to a foreclosure in accordance with the provisions of the mortgage, or that the defendant is insolvent.   The receiver appointed to take possession of the property, operate the railway, and to receive and disburse the income and earnings derived therefrom as the court might direct, having filed his report allowing, subject to the mortgage, certain unsecured claims which have been presented and proved, the Milford, Attleborough and Woonsocket Street Railway Company, hereinafter referred to as the claimant, the amount of whose debt is undisputed, contends that the mortgage as to the personal property is invalid because it was not duly recorded, and that if the mortgage is held to be valid, its debt should be given precedence either for the entire amount, or by analogy with the period fixed for the semiannual payment of interest on the bonds, for so much as accrued within six months next preceding the filing of the bill.   *Westinghouse Air Brake Co.* v. *Kansas City Southern Railway,* 137 Fed. Rep. 26, 40.

The R. L. c. 198, § 1, requires a mortgage of personal property to be recorded within fifteen days "from the date written in the mortgage" or it shall not be enforceable against a person other than the parties thereto, unless the property mortgaged has been delivered to or retained by the mortgagee.   What do the words, "date written in the mortgage," mean ?   The original St. of 1874, c. 111, § 1, provided that such mortgage must be recorded "within fifteen days after the date thereof," and so in substance are the Pub. Sts. c. 192, § 1.   It was held in *Shaughnessey* v. *Lewis,* 130 Mass. 355, that the word "date" should be considered as meaning the time when the instrument became effectual as the contract of the parties, namely, upon delivery, of which the time

stated in the mortgage might be considered as evidence, even if it would not be conclusive. But presumably in consequence of this decision the St. of 1883, c. 73, enacted that "every mortgage of personal property shall be recorded within fifteen days from the date written in such mortgage," and this has since been the law.

The mortgage could not have been admitted to record in the registry of deeds without acknowledgment, even if by reason of the dual character of the mortgaged property it also must be entered upon the records of the town. R. L. c. 127, § 7; c. 198, § 1. Although the indenture or mortgage is referred to in the caption as dated July 2, 1900, the *in testimonium* clause and certificate of acknowledgment, where it is declared that the defendant's corporate seal is affixed and the instrument lawfully executed and acknowledged in its name and behalf by its president and treasurer, duly authorized by vote of the stockholders, bears date as of July 27, 1900. The instrument, while a mortgage, includes the terms of the contract, the performance of which is secured. The wording of the context, especially in Article II,* shows beyond conjecture that the time first named designated only the date of the bonds from which the periods when the semiannual interest should accrue and become payable were to be computed. It was the intention of the parties that the instrument, when properly executed, should constitute a mortgage, and until then it was not dated, nor did it become a lien upon the property. Having been recorded within fifteen days thereafter the mortgage is valid. *Orcutt* v. *Moore,* 134 Mass. 48, 52. *Drew*

---

* Article II was entitled "Bonds," and was as follows:

" The bonds secured by these presents are dated July 2, 1900, shall not exceed one hundred thousand dollars ($100,000) in amount, are of the denomination of one thousand dollars ($1,000) each and numbered consecutively from one to one hundred inclusive, and bear interest at the rate of five per centum per annum, payable semi-annually, and are in substantially the form following: —

[Here followed the form of the bonds and coupons.]

"Upon the execution and recording of this mortgage the Trustee shall certify and deliver to the Treasurer of the Company, or his order, the bonds secured hereby to such an amount not exceeding one hundred thousand dollars ($100,000) as may be authorized by the Board of Railroad Commissioners."

v. *Streeter*, 137 Mass. 460, 462. *Amerige* v. *Hussey*, 151 Mass. 300. *Berry* v. *Levitan*, 181 Mass. 73. *Harrison* v. *J. J. Warren Co.* 183 Mass. 123.

The defendant although chartered to construct, equip and operate a street railway, never installed an electrical plant, but from the time it began to do business the motive power has been furnished by the claimant. Under the terms of the contract the compensation was fixed at a daily rate, which the parties agree was reasonable, and the plaintiff concedes that the service rendered was necessary for the operation of the railway. Although for a time payments were regularly made, when the receiver was appointed they were in arrears for a period slightly in excess of two years.

The property for the purposes of our decision may be treated as if converted by sale and the proceeds held as a fund for distribution by the court. *Markey* v. *Langley*, 92 U. S. 142. The argument of counsel for the claimant is that the debt should be given priority over the bondholders, on the authority substantially of *Miltenberger* v. *Logansport Railway*, 106 U. S. 286. See also *Southern Railway* v. *Carnegie Steel Co.* 176 U. S. 257. It is unnecessary, however, to determine whether *Miltenberger* v. *Logansport Railway*, holding that a court of equity has power not only to appoint, but to authorize, a receiver of a railroad to hire money required for the management and preservation of the property, and to pay claims for materials, repairs, ticket and freight balances, some of which were contracted more than ninety days before his appointment, yet all of which were indispensable to the business of the road, and to order the receiver to pay such loans and claims before making payment of a valid first mortgage, overdue when the suit to foreclose was begun by a second mortgagee, has been limited by *Gregg* v. *Metropolitan Trust Co.* 197 U. S. 183, where a majority of the court decided that a claim for ties necessary to the preservation of a railroad, furnished six months previous to the appointment of a receiver, did not in the absence of special circumstances entitle the petitioner to a preference over a mortgage recorded before the contract for the ties was made. See also *Wallace* v. *Loomis*, 97 U. S. 146; *Union Trust Co.* v. *Souther*, 107 U. S. 591; *Union Trust Co.* v. *Illinois Midland Railway*, 117 U. S. 434. It is plain from the nature

and terms of the contract that the parties at its inception had no intention to charge the property with a lien. *Pinch* v. *Anthony,* 8 Allen, 536. *Elmore* v. *Symonds,* 183 Mass. 321, 322. *Westall* v. *Wood,* 212 Mass. 540, 545. The service was performed in so far as appears on the general credit of the mortgagor, and apparently the power could have been discontinued at will if the payments which accrued daily were not made. The plaintiff's security would have been unimpaired if the claimant, being unable to collect, had sought to secure reimbursement by a second mortgage, or to enforce payment by attachment, of the same personalty. *Berry* v. *Levitan,* 181 Mass. 73. *Travis* v. *Bishop,* 13 Met. 304. R. L. c. 167, § 69. If, during the period in arrears, current earnings, with its knowledge and assent, had been diverted for the benefit of the plaintiff before necessary current indebtedness, to maintain the road in operation, had been paid, there might have been ground for contending that the security of the bondholders should be charged in equity with the restitution of the fund, where but for such diversion there would have been net earnings to which the equitable lien would have attached. *Coram* v. *Davis,* 209 Mass. 229, 246. *Burnham* v. *Bowen,* 111 U. S. 776. *St. Louis, Alton & Terre Haute Railroad* v. *Cleveland, Columbus, Cincinnati & Indianapolis Railway,* 125 U. S. 658. No interest, however, was paid on the bonds. Indeed the receipts were not sufficient even to meet running expenses. Nor can the delay to institute foreclosure proceedings, until nearly three years elapsed after the last instalment of interest had been met, create an equitable lien. The mortgage, even if the mortgagor remained in possession, still subsisted, and there is not even an intimation that with knowledge of the business relations of the mortgagor and the claimant, a foreclosure had been postponed so that the mortgagee might be benefited by the claimant's expenditure. *Mersick* v. *Hartford & West Hartford Horse Railroad,* 76 Conn. 11. *Fordyce* v. *Omaha, Kansas City & Eastern Railroad,* 145 Fed. Rep. 544, 556. The debt incurred doubtless tended to preserve temporarily the business and good will, upon the success of which the value of the bonds as an investment may largely have depended.

But if the broad doctrine which the claimant presses is given full recognition, it is difficult in the exercise of sound discretion to

ascertain where the line of demarcation should be drawn, for the preservation of a street railway as a going business enterprise, as well as its safe and efficient operation, demands not merely the furnishing of motive power, but cars, rails, ties, and other essential equipment. *Lackawanna Iron & Coal Co.* v. *Farmers' Loan & Trust Co.* 176 U. S. 298, 316. *Gregg* v. *Metropolitan Trust Co.* 197 U. S. 183. While it is true that the plaintiff invokes the aid of a court of equity to enforce its security, it is also true that it comes as a mortgagee under a valid instrument. By the appointment of a receiver the court is not vested with a general authority to displace vested liens on the body of the property created by contract, and it is the exception and not the rule, that the priority of mortgage liens can be displaced in favor of unsecured general creditors. *Kneeland* v. *American Loan & Trust Co.* 136 U. S. 89, 98. *Thomas* v. *Western Car Co.* 149 U. S. 95, 111. *Lackawanna Iron & Coal Co.* v. *Farmers' Loan & Trust Co.* 176 U. S. 298, 316. The defendant had full authority to convey in mortgage its entire property and, as the mortgage had been recorded, the claimant, when it entered into the contract, did not act under any mistake or misapprehension as to the actual condition of the defendant's title, which it should not be permitted to overset even if the claim is meritorious. *Bullock* v. *Williams*, 16 Pick. 33, 35. *Allis-Chalmers Co.* v. *Central Trust Co.* 190 Fed. Rep. 700.

The debt, moreover, if the defendant had been declared an insolvent debtor, is not within the class entitled to a preference. The claimant under R. L. c. 163, § 118, would have ranked as an unsecured general creditor. The St. of 1897, c. 400, now R. L. c. 150, § 29, specifies the class of claims entitled to priority in the settlement of insolvent estates by receivers, which corresponds substantially with the preferences enumerated in R. L. c. 163, § 118, cl. 3–5. And the St. of 1898, c. 420, re-enacted in R. L. c. 167, § 126, further assimilated the effect of a receivership on the rights of creditors, with the operation of an assignment under R. L. c. 163, §§ 54, 55, by providing that an attachment four months old prior to filing the bill should be dissolved, unless the court ordered the action prosecuted for the benefit of the estate. It evidently was the intention of the Legislature to place upon a parity all unsecured debts owed by an insolvent debtor,

whether the estate is administered by a court of insolvency, or by a court of equity through a receivership. *Waite* v. *Worcester Brewing Co.* 176 Mass. 283. Under these enactments, the admission to proof of alleged preferential debts ordinarily depends upon the inquiry, whether they come within the prescribed classification. When called upon to determine the rights of different classes of creditors entitled to participation in the distribution of assets of an insolvent corporation, a court of equity, even in the absence of statutory provisions expressly directing the order in which debts shall be ranked, will adopt and follow wherever practicable the rule prescribed by statute relating to the allowance of debts in insolvency or bankruptcy. *Jones* v. *Arena Publishing Co.* 171 Mass. 22, 29. *Franklin County National Bank* v. *First National Bank of Greenfield,* 138 Mass. 515, 518. Story Eq. Jur. (13th ed.) § 64. See bankruptcy act 1898, § 64, b. *In re Byrne,* 97 Fed. Rep. 762. We are not aware of any inherent power of this court which enables us to diminish the rights conferred on the mortgagee by the R. L. c. 198, § 1, or to sanction the allowance of preferences or priorities between a secured and unsecured creditor by taking them up where they were left by the requirements of our laws, and extending the right of participation further than the law permits. *Jones* v. *Arena Publishing Co.* 171 Mass. 22. *Sunter* v. *Sunter,* 190 Mass. 449, 455. *Metropolitan Trust Co.* v. *Tonawanda Valley & Cuba Railroad,* 103 N. Y. 245. *Magniac* v. *Thomson,* 15 How. 281, 299. *Hedges* v. *Dixon County,* 150 U. S. 182.

The report of the receiver should be confirmed.

*Decree accordingly.*