**Irving WIDETT, Trustee, Appellant,**

**v.**

**Clement D'ANDRIA, Petitioner, Appellee.**

**No. 5148.**

United States Court of Appeals
First Circuit.
March 4, 1957.

---

Joseph Kruger, Boston, Mass., with whom Widett & Kruger, Boston, Mass., on brief, for appellant.

George J. Shagory, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

WOODBURY, Circuit Judge.

A Referee in Bankruptcy, at a hearing on a petition to establish the lien of a mortgage of personal property located in Massachusetts and given to the petitioner by the bankrupt more than four months before it was petitioned into bankruptcy, admitted parol evidence to show the actual day upon which the mortgage was executed when the instrument itself gave only the month and year. On the basis of this evidence the Referee found that the mortgage, although dated "this . . . day of February 1954," had in fact been executed and delivered on February 15, 1954. Thus, since the mortgage was recorded on the records of the appropriate town two days later on February 17, 1954, the Referee held that it was timely recorded and hence valid against persons other than the parties thereto under Mass.Gen.Laws (Ter.Ed.) c. 255, § 1 wherein it is provided: "Mortgages of personal property shall, within fifteen days from the date written in the mortgage, be recorded on the records of the town where the mortgagor resides when the mortgage is made, and on the records of the town where he then principally transacts his business. * * * The mortgage shall not be valid against a person other than the parties thereto until so recorded; and a record made subsequently to the time limited shall be void." The Trustee petitioned the court below for review of the Referee's order establishing the lien of the mortgage and that court dismissed the Trustee's petition and affirmed the order of the Referee. Notice of appeal was seasonably filed on behalf of the Trustee by counsel who, although in fact retained by the Trus-

682

tee for that purpose, had not been appointed to act as his attorneys in accordance with General Order in Bankruptcy No. 44, 11 U.S.C.A. following section 53 quoted, so far as material, in the margin.[1]

■ The first matter for our consideration is the appellee's motion to dismiss this appeal for lack of jurisdiction on the ground that the attorneys who filed the notice of appeal had no standing to do so, indeed were strangers to the litigation, with the asserted result that the notice of appeal was a nullity. We think the motion to dismiss must be denied.

■ We have no doubt that General Order No. 44 has the force of a statute and must be strictly construed and applied. See In re Eureka Upholstering Co., 2 Cir., 1931, 48 F.2d 95; In re H. L. Stratton, Inc., 2 Cir., 1931, 51 F.2d 984; In re Rogers-Pyatt Shellac Co., C.A.2, 1931, 51 F.2d 988. But the only cases on the Order cited to us by counsel or discovered by our own research have to do with the allowance of fees and expenses to counsel not appointed in conformity with the Order, a matter not presented here. In none of them was the court called upon to consider, or did it consider, the question of the authority of counsel to act for a trustee, receiver or debtor in possession when not appointed by the court as the Order requires. The an-

swer to the question before us must therefore be decided by reference to the purpose of the Order as disclosed by its language.

The basic purpose of the Order is to protect the bankrupt's estate—to conserve as much of it as possible for the creditors—first by preventing the unnecessary employment of attorneys to represent the officials having charge of the estate under the direction of the court, and second, when employment of attorneys is necessary, to assure that those employed are capable men who have no interest adverse to the estate. The only sanction provided in the Order is denial of fees and expenses to attorneys not appointed in conformity with its requirements.

Certainly an appeal to this court from an order adverse to a Trustee in Bankruptcy does not necessarily harm but on the contrary may well benefit the estate. And such an appeal if successful benefits the estate as much when taken by counsel authorized to do so but not appointed as the Order requires as when taken by counsel who have been properly appointed. Even an unsuccessful appeal can harm the estate only by delay and to the extent of the costs that might be imposed, and these harms to the estate are the same whether the appeal was taken by regularly appointed counsel or by counsel acting for the Trustee but not appointed in

[1] "No attorney for a receiver, trustee or debtor in possession shall be appointed except upon the order of the court, which shall be granted only upon the verified petition of the receiver, trustee or debtor in possession, stating the name of the counsel whom he wishes to employ, the reasons for his election, the professional services he is to render, the necessity for employing counsel at all, and to the best of the petitioner's knowledge all of the attorney's connections with the bankrupt or debtor, the creditors or any other party in interest, and their respective attorneys. If satisfied that the attorney represents no interest adverse to the receiver, the trustee, or the estate in the matters upon which he is to be engaged, and that his employment would be to the

best interests of the estate, the court may authorize his employment, and such employment shall be for specific purposes unless the court is satisfied that the case is one justifying a general retainer. If without disclosure any attorney acting for a receiver or trustee or debtor in possession shall have represented any interest adverse to the receiver, trustee, creditors or stockholders in any matter upon which he is employed for such receiver, trustee, or debtor in possession, the court may deny the allowance of any fee to such attorney, or the reimbursement of his expenses, or both, and may also deny any allowance to the receiver or trustee if it shall appear that he failed to make diligent inquiry into the connections of said attorney."

conformity with the Order. Indeed, an unsuccessful appeal when taken by counsel not appointed by the court may harm the estate less than such an appeal when taken by court appointed counsel, for, if taken by counsel acting for the Trustee but not appointed as the Order requires, counsel's fees and expenses may be denied, whereas we may assume that the fees and expenses of appointed counsel would not be denied except, perhaps, in the unlikely event that the appeal was frivolous and taken only for delay or to earn a fee. The sanction provided in the Order seems adequate to effectuate its purpose, at least as far as taking an appeal is concerned. We see no point in adding lack of authority to file notice of appeal to the sanction stated in the Order.

We turn now to the substantive question.

■ The appellant does not challenge the general proposition that resort may be had to parol evidence to supply a missing date of execution in a deed or mortgage, since the evidence has no tendency to vary or contradict a written term or provision. The appellant's position is that the Massachusetts recording statute cited and quoted from above was enacted for the express purpose of excluding the use of parol evidence for that purpose. We do not agree.

■ The provision in the present Massachusetts statute that mortgages of personal property must be recorded "within fifteen days from the *date written in the mortgage*" was first enacted in 1883, c. 73, § 1 of the Laws of that year, as an amendment of an earlier statute, Laws of 1874, c. 111, § 1, which provided that such mortgages must be recorded "within fifteen days after *the day thereof*." (Italics supplied.) This amendment followed the decision of the Supreme Judicial Court of the Commonwealth of Massachusetts in Shaughnessey v. Lewis, 1881, 130 Mass. 355, in which the Court held that parol evidence was admissible to show that a mortgage covering both real and personal property dated June 16, 1879, acknowledged July 21, 1879, and recorded July 24, 1879, had actually been executed and delivered on the day it was acknowledged and so was timely recorded and valid. The Court said at page 356: "It would be a very harsh as well as unnatural construction of the statute to suppose that the Legislature meant to make void as against the world an instrument which, in one of the various modes in which mistakes in the calendar occur, happens to be misdated." And the Court said at the bottom of the same page and the top of the next: "The real question is, when did the instrument first take effect as a valid contract between the parties. If the instrument bore no other date than the month or the year, it would be competent for either party to show its true date; and, while the party claiming under it might show that in fact it was executed within fifteen days of its record, it would be equally competent for the other party to show that it had been effectual as a contract between the parties for a long time before the fifteen days." Under this decision a mortgage dated more than fifteen days before the date it was recorded, and hence on its face invalid as to any one other than the parties thereto, could be shown by extrinsic evidence actually to have been executed and delivered within the fifteen day period and so, contrary to appearances, properly recorded and valid against third parties. The statutory amendment was clearly designed to remedy this situation by making the actual "date written in the mortgage" controlling. The amendment does not purport to control the method by which the "date written in the mortgage" is to be determined—to prevent determination of that date in appropriate cases by resort to parol evidence in accordance with established principles. Nor do we think that the statute by necessary implication requires the result contended for by the appellant. A mortgage dated as the one under con-

siberation does not on its face show that its actual date was more than fifteen days before the date it was recorded. On the contrary, it shows on its face that in fact it may have been dated within the fifteen day period. It would not induce a sense of security in anyone searching the record; it would instead be a red flag indicating danger to subsequent mortgagees or creditors.

Furthermore, the decision of the Supreme Judicial Court of the Commonwealth of Massachusetts in Old Colony Trust Co. v. Medfield & Medway Street Railway Co., 1913, 215 Mass. 156, 102 N.E. 484, lends support to the view that the recording statute does not necessarily forbid resort to parol evidence to determine the "date written in the mortgage," for in that case the Court permitted resort to the mortgage note to resolve the confusion resulting from the inclusion of two dates written in a mortgage covering personal property, one within fifteen days of the date of recording and the other prior thereto. See also In re Jennings, D.C.Mass. 1922, 284 F. 729.

A judgment will be entered affirming the order of the District Court.